**S**ILVERMAN**A**CAMPORA **LLP**
Attorneys for Fox 716 Realty LLC
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Adam L. Rosen
Justin S. Krell

**Hearing Date: June 16, 2010**
**Time:  2:00 p.m.**

**Objections Due: June 11, 2010**
**Time:  4:00 p.m.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

In re:

SWEET N SOUR 7TH AVE CORP.,

                    Debtor.
-----------------------------------------------------------x

Chapter 11
Case No. 10-12723 (MG)

## MOTION OF FOX 716 REALTY LLC MODIFYING AUTOMATIC STAY OF 11 U.S.C. §362 TO PERMIT ENFORCEMENT OF WARRANT OF EVICTION AND CONTINUATION OF NON-PAYMENT SUMMARY PROCEEDING

TO:    THE HONORABLE MARTIN GLENN
        UNITED STATES BANKRUPTCY JUDGE:

Fox 716 Realty LLC (the "Movant"), the landlord and a creditor of Sweet N Sour 7th Ave. Corp. (the "Debtor"), the above-captioned debtor, hereby moves (the "Motion") this Court for an order modifying the automatic stay of section 362 of title 11, United States Code (the "Bankruptcy Code") to permit Movant to enforce the warrant of eviction issued pursuant to a "so ordered" stipulation entered into between the Movant and the Debtor (the "Stipulation") in the non-payment summary proceeding pending commenced by Movant against the Debtor in the Civil Court of the City of New York, County of New York, Housing Part (the "Housing Court") entitled Fox 716 Realty LLC v. Sweet N Sour 7th. Corp. d/b/a Tasti-D Lite, Index No. L&T 53115/10 (the "Non-Payment Action"), with respect to the commercial real property known as 158 East 45th Street, New York, New York 10017 located in the building known as 154-160 East 45th Street a/k/a 716 Third Avenue, New York, New York 10017 (the "Premises"), and to take any further action in the Housing Court and otherwise which may be necessary to obtain possession of the Premises.  In support of the Motion, Movant respectfully represents as follows:

## BACKGROUND

**The Chapter 11 Filing**

1. On May 24, 2010 (the "Filing Date"), the Debtor filed a petition under chapter 11 of the Bankruptcy Code in this Court.

2. Upon information and belief, the Debtor operates a "Tasti D-Lite" frozen desert store at the Premises under a lease with Movant.

**The Lease**

3. Movant is the landlord of the Premises, having executed a four (4) year and nine (9) month lease, dated January 31, 2007, with the Debtor (the "Lease"). (A copy of the Lease is annexed to the declaration of Leonard Fox dated May 27, 2010 (the "Fox Declaration") as **Exhibit A.**)

4. The monthly rent under the Lease is $8,570.00 for the period February 1, 2009 through January 31, 2010 and $8,870.00 for the period February 1, 2010 through January 31, 2011. The term of the Lease expires on October 31, 2011.

5. As of the date hereof, the Movant is holding a security deposit in the amount of $27,540.00 (the "Deposit") under the terms of the Lease.

**The Non-Payment Action**

6. On or about January 20, 2010, Movant commenced a non-payment summary proceeding against the Debtor because the Debtor was in substantial default in payment of rent. (Copies of the Notice of Petition, Petition for Non-Payment and Affidavit of Service are annexed to the Fox Declaration as **Exhibit B**.)

7. As of the Filing Date, the Debtor owed Movant $60,715.00 in rent and other charges. The Debtor has not paid any postpetition rent to Movant. (A copy of an accounting of the prepetition rent is annexed to the Fox Declaration as **Exhibit C**.)

**The Warrant of Eviction**

8.  On March 17, 2010, the Housing Court "so ordered" the Stipulation. (A copy of the Stipulation is annexed to the Fox Declaration as **Exhibit D**.). Under the terms of the Stipulation, among other things, a warrant of eviction (the "Warrant") was issued against the Debtor and the execution of the Warrant was stayed (the "Stay") on the condition that the Debtor pay rent pursuant to a rent schedule defined in the Stipulation. (A copy of the Warrant is annexed to the Fox Declaration as **Exhibit E**.)

9.  Additionally, in the event of a default, Movant was required to provide the Debtor with 3 days written notice of such default (the "Notice") and if the Debtor was unable to cure the default in that time period the Warrant became effective, the Stay was terminated and the United States Marshall was instructed to execute on the Warrant.

10. On May 14, 2010 the Debtor was in default under the Stipulation because it failed to remit payment due May 7, 2010 pursuant to the terms of the Stipulation and the April 2010 rent payment was returned as unpaid. Accordingly, the Movant provided the Debtor with the Notice and the Debtor failed to cure the default within 3 days of receiving the Notice. (A copy of the Notice is annexed to the Fox Declaration as **Exhibit F**.) The Debtor's failure to cure the default terminated the Stay, thus, the Warrant became effective. Moreover, the issuance of the Warrant which terminated the Lease, therefore, under New York State law, the Debtor has no legal right to continue to occupy the Premises.

11. Based on the timing of the Debtor's bankruptcy filing and the Warrant becoming effective due to the Debtor's default under the Stipulation, Movant believes that this case was filed as a delay tactic by the Debtor to frustrate Movant's enforcement of the Warrant. Moreover, because the Debtor only lists four additional creditors (Tasti D-Lite, Imperial Paper & Bag, Nassau Candy and Signature Bank), this case appears to be essentially a two-party dispute.

## RELIEF REQUESTED

12. By this Motion, Movant seeks entry of an order modifying the automatic stay of Bankruptcy Code §362 to (a) permit Movant to proceed with the Non-Payment Action and enforce the Warrant (b) exercise the Movant's right of recoupment with respect to the Deposit Movant is holding under the Lease, and (c) take any further action which may be necessary to obtain possession of the Premises.

13. Bankruptcy Code section 362(d), which governs relief from the automatic stay, provides in pertinent part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay--
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if --
>    (A) the debtor does not have an equity in such property; and
>    (B) such property is not necessary to an effective reorganization ...

11 U.S.C. § 362(d).

14. As demonstrated below, Movant is clearly entitled to relief from the automatic stay under Bankruptcy Code sections 362(d)(1) and (2). Movant's Lease with the Debtor was terminated when the warrant of eviction was issued. See Rocar Realty Northeast v. Jefferson Valley Mall, 38 A.D.3d 744, 833 N.Y.S.2d 522, 525 (2d Dep't 2007) ("The issuance of the warrant of eviction terminated any existing tenancy and annulled the landlord-tenant relationship by operation of law.") Termination of the Lease constitutes "cause" to modify the automatic stay.

Cause Exists to Modify the Automatic Stay
Under Bankruptcy Code Section 362 (d)(1)

**A.      Definition of "Cause"**

15.     Whether "cause" exists to modify the stay must be determined on a "case by case basis, taking into consideration the interests of the debtor, the claimants and the estate." In re MacInnis, 235 B.R. 255, 259 (S.D.N.Y. 1998) (citing In re Keene Corp., 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994)); Manhattan King David Restaurant, Inc. v. Levine (In re Manhattan King David Restaurant, Inc.), 163 B.R. 36, 40 (S.D.N.Y. 1993) (explaining the "term 'cause' is not defined in the Bankruptcy Code, and whether cause exists should be determined on a case by case basis") (citing Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1286 (2d Cir. 1990)).

16.     Although "cause" is not defined by the Bankruptcy Code, where a claimant seeks relief from the stay to pursue a cause of action in a non-bankruptcy forum, Congress has stated:

> In addition, "it will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere."

S. Rep. No. 989, 95th Cong., 2d Sess. 50, reprinted in 1978 U.S.C.C.A.N. 5787, 5836.  "The Bankruptcy Court must make the following determinations in deciding if cause exists to modify the stay:

> (1)  Whether the litigation causes the debtor great prejudice.  In re Johnson, 115 B.R. 634, 636 (Bankr. D. Minn. 1989).
>
> (2)  Whether a balancing of the respective hardships tips in favor of the debtor or creditor, resulting from denial or granting of the relief.  Id.
>
> (3)  Whether public policy supports the type or kind of action the movant is bringing against the debtor.  Carter v. Larkham (In re Larkham), 31 B.R. 273 (Bankr. D. Vt. 1983)."

Edmonson v. America West Airlines, Inc. (In re America West Airlines), 148 B.R. 920, 922-23 (Bankr. D. Ariz. 1993).

17. Modification of the automatic stay may be granted by a bankruptcy court under section 362(d)(1) to permit a creditor to proceed with litigation in another forum in an attempt to regain possession of its collateral or property for cause. See In re Burger Boys, Inc., 183 B.R. 682 (S.D.N.Y. 1994); In re Diplomat Electronics Corp., 82 B.R. 688 (Bankr. S.D.N.Y. 1988).

**B.  The Debtor's Lease Was Terminated**

18. Under section 362(d)(1), cause exists to modify the stay where no landlord-tenant relationship is in existence when the bankruptcy case is filed. See Bell v. Alden Owners, Inc., 199 B.R. 451, 458 (S.D.N.Y. 1996); In re Seven Stars Restaurant, Inc., 122 B.R. 213, 218 (Bankr. S.D.N.Y. 1990); In re GSVC Restaurant Corp., 3 B.R. 491 (Bankr. S.D.N.Y. 1980), In re GSVC Restaurant Corp., 10 B.R. 300 (S.D.N.Y. 1980).

19. New York law is clear that the issuance of a warrant of eviction cancels the lease between the parties and annuls the landlord-tenant relationship. See N.Y. R.P.A.P.L. §749(3); Rocar Realty Northeast v. Jefferson Valley Mall, 38 A.D.3d 744, 833 N.Y.S.2d 522, 525 (2d Dep't 2007), In re Westchester Tank Fabricators, Ltd., 207 B.R. 391, 402 (Bankr. E.D.N.Y. 1997); Bell, 199 B.R. at 458.

20. The filing of a bankruptcy petition does not resurrect a landlord-tenant relationship. See Bell, 199 B.R. at 458; Seven Stars Restaurant, Inc., 122 B.R. at 218; Darwin, 22 B.R. 259, 263 (Bankr. E.D.N.Y. 1982); In re Acorn Investments, 8 B.R. 506 (Bankr. S.D. Cal. 1981); In re R.R.S., Inc., 7 B.R. 870 (Bankr. M.D. Fla. 1980)("...the automatic stay provision of § 362(e) [sic] of the Bankruptcy Code does protect the debtor's naked right of possession of the premises, but for a very limited time only...  This is so because the fact that the automatic stay continues in effect and protects the naked right of possession, it does not have any bearing on the continued viability of a lease agreement."). See also In re Ripples of Clearview, Inc., 26 B.R. 453, 456-57 (Bankr. E.D.N.Y. 1983) (month-to-month tenant cannot justify continuation of the automatic stay).

21. Cause also exists to modify the stay because the Debtor cannot assume the Lease because it has been terminated. The Lease is not property of the Debtor's estate under Bankruptcy Code section 541. Section 541(b)(2) specifically excludes from property of the estate

> any interest of the debtor as lessee under a lease of nonresidential real property that has terminated at the expiration of the stated term of such lease before commencement of the case under this title, and... during the case.

11 U.S.C. § 541(b)(2).

22. A lease may be terminated under New York law by operation of a conditional limitation. See In re Policy Realty Corp., 242 B.R. 121 (S.D.N.Y. 1999). A conditional limitation can be imposed by either a default notice or a stipulation of settlement.

23. A lease terminated prior to the bankruptcy case cannot be assumed, and the inability to assume a lease constitutes "cause" for relief from the stay under Bankruptcy Code section 362(d)(1). See Seven Stars Restaurant, Inc., 122 B.R. at 218; Acorn Investments, 8 B.R. at 509-510; R.R.S., Inc., 7 B.R. at 872.

24. Here, the Warrant was issued on March 26, 2010 but execution of the Warrant was stayed pursuant to the terms of the Stipulation. On or about May 14, 2010, the Debtor was in default under the Stipulation and as a result the Warrant became effective. The issuance of the Warrant canceled the Lease and terminated the landlord-tenant relationship between the Debtor and the Movant. The filing of this chapter 11 case cannot revive the Lease.

**C.  The *Sonnax* Factors**

25. In Sonnax Indus., Inc., 907 F.2d 1280 (2d Cir. 1990), the Second Circuit adopted a twelve factor analysis to determine whether the stay should be vacated or modified to permit litigation to be continued in another forum. In re Curtis, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984), first set forth the factors, which include:

> (1) whether relief would result in a partial or complete resolution of the issues;
>
> (2) lack of any connection with or interference with the bankruptcy

case;

(3) whether the other proceeding involves the debtor as a fiduciary;

(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

(5) whether the debtor's insurer has assumed full responsibility for defending it;

(6) whether the action primarily involves third parties;

(7) whether litigation in another forum would prejudice the interests of other creditors;

(8) whether the judgment claim arising from the other action is subject to equitable subordination;

(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10) the interests of judicial economy and the expeditious and economical resolution of litigation;

(11) whether the parties are ready for trial in the other proceeding; and

(12) impact of the stay on the parties and the balance of harms.

Sonnax Indus., 907 F.2d at 1286. Only the relevant factors need be considered. See In re Touloumis, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994) (citing Sonnax Indus., 907 F.2d at 1285). The court need not assign the factors equal weight. See id. (citing In re Anton, 145 B.R. 767, 770 (Bankr. E.D.N.Y. 1992)). The court is even permitted to lift the stay sua sponte to allow litigation to continue in another forum. See In re Laventhol & Horwath, 139 B.R. 109, 116 n.6 (S.D.N.Y. 1992); Niagara Mohawk Power Corp. v. Megan Racine Assocs., Inc. (In re Megan-Racine Assos., Inc.), 180 B.R. 375 (Bankr. N.D.N.Y. 1995).

26. Only factors 1, 2, 4, 7, 10, and 12 are relevant here.

Factor 1

27. Granting the Motion would result in the continued prosecution of the Non-Payment Action, which would ultimately result in a complete resolution of the dispute regarding possession of the Premises between the Movant and the Debtor. Movant seeks only to regain possession of the Premises. Movant understands that its pre-Filing Date claims against

the Debtor will be handled by this Court in the chapter 11 case.

Factor 2

28. Continuing the Non-Payment Action will not interfere with the Debtor's chapter 11 case. The Debtor's case is doomed because it has no lease and no realistic prospects to reorganize. Nothing in the Bankruptcy Code entitles the Debtor to remain in the Premises after the Lease has been terminated.

Factor 4

29. Movant's claims are based upon New York landlord tenant law. The Housing Court is a specialized tribunal and the appropriate forum to consider the relevant landlord-tenant issues.

Factor 7

30. Allowing Movant to proceed with the Non-Payment Action would not prejudice any legitimate interests of other creditors because Movant only seeks to regain possession of the Premises consistent with applicable state law.

Factor 10

31. Judicial economy would best be served by modifying the stay. The Housing Court is in the best position to determine the respective rights of the parties in the Non-Payment Action.

Factor 12

32. The continuation of the stay prejudices Movant because the Debtor has no legal right to remain in the Premises, has not paid certain prepetition rent and postpetition rent and Movant's interest in the Premises is not being adequately protected.

33. The above factors strongly favor the granting of the Motion.

34. For all of the above reasons, Movant submits that there is sufficient cause to modify the automatic stay for the specific purposes indicated herein.

### The Automatic Stay Should be Modified Pursuant to Section 362(d)(2) Because the Debtor Has No Equity in the Premises and the Premises Is Not Needed for an Effective Reorganization

35.	In addition, Movant is entitled to relief under section 362(d)(2) because the Debtor has no equity in the Premises and the Premises is not necessary for an effective reorganization.

36.	First, the Debtor is a lessee under a terminated lease and therefore has no equity in the Premises. Second, the Debtor has not demonstrated that it has a viable opportunity to reorganize in chapter 11. The Debtor filed chapter 11 after the Lease was terminated and has no enforceable right to continue to remain in the Premises.

37.	For all of the foregoing reasons, Movant submits that cause exists to modify the automatic stay under Bankruptcy Code sections 362(d)(1) and (d)(2) to permit Movant to continue prosecution of the Non-Payment Action and to take appropriate steps to recover possession of the Premises.

### Movant's Right of Recoupment with Respect to the Deposit

38.	Movant holds a perfected security interest in the Deposit. See U.C.C. §9-313. In light of the fact that the Debtor owes Movant a significant amount of prepetition and postpetition rent, Movant seeks to exercise its right of recoupment with respect to the Deposit for the past-due rent owed Movant by the Debtor under the Lease. Movant is entitled to exercise its right of recoupment because the Deposit and the past-due rent are both derived from the Lease and such recoupment rights are not subject to the automatic stay under the Bankruptcy Code. See In re McMahon, 129 F.3d 93 (2d Cir. 1997) (holding that a utility company's postpetition application of a prepetition utility deposit to the debtor's prepetition utility obligation was recoupment and not a setoff, thus, was not subject to the automatic stay)

## **CONCLUSION**

39. Notice of this Motion has been given to (a) the Debtor, (b) Debtor's counsel, (c) the Office of the United States Trustee, and (d) all creditors of the Debtor as listed in the Debtor's petition filed in this case.

40. No prior request for the relief sought herein has been made to this or any other Court.

**WHEREFORE**, for all of the foregoing reasons and based upon the Fox Declaration, Movant respectfully requests that this Court enter an order substantially in the form annexed hereto as **Exhibit A** and grant Movant such further relief as the Court deems appropriate.

Dated: Jericho, New York
May 27, 2010

Respectfully submitted,

**SILVERMANACAMPORA LLP**
Attorneys for Fox 716 Realty LLC

By: _s/ Adam L. Rosen_
Adam L. Rosen
Justin S. Krell
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300