UNITED STATES BANKRUPTCY COURT  FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

In re:               :

                :

                :

  SWEET N SOUR 7th AVE CORP.,  :  Chapter 11

                :  Case No. 10-12723 (MG)

                :

          Debtor.  :

-----------------------------------------------------------------x

## AMENDED MEMORANDUM OPINION AND ORDER LIFTING STAY

*A P P E A R A N C E S:*

LAW OFFICES OF ROBERT J. GUMENICK, PC
*Proposed Attorneys for the Debtor*
160 Broadway, Suite 1100
New York, New York 10038
By: Robert J. Gumenick, Esq.

SILVERMAN ACAMPORA LLP
*Attorneys for Fox 716 Realty LLC*
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
By: Robert Nosek, Esq.
   Justin S. Krell, Esq.

DIANA G. ADAMS
*United States Trustee for Region 2*
33 Whitehall Street, 21st Floor
New York, NY 10004
By: Elisabetta G. Gasparini, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

   Fox 716 Realty LLC ("Landlord"), the landlord and a creditor of Sweet N Sour

7th Ave Corp. ("Debtor"), moves the Court for an order modifying the automatic stay to

permit the Landlord to enforce the prepetition warrant of eviction obtained against the

Debtor.  The warrant of eviction was issued but stayed on March 26, 2010, pursuant to a

"so ordered" stipulation between the Landlord and the Debtor (the "Stipulation") in a non-payment summary proceeding commenced in the Civil Court of the City of New York, County of New York, entitled *Fox 716 Realty LLC v. Sweet N Sour 7th Corp. d/b/a Tasti-D Lite*, Index No. L&T 53115/10.

The Debtor operates a "Tasti D-Lite" frozen desert store under a four year and nine month lease (the "Lease") for commercial real property at 154-160 East 45th Street a/k/a 716 Third Avenue, New York, New York 10017 (the "Premises"). The Lease, dated January 31, 2007, expires on October 31, 2011, and provides for monthly rent of $8,000.00 for the period February 1, 2007 through January 31, 2008, $8,280.00 for the period February 1, 2008 through January 31, 2009, $8,570.00 for the period February 1, 2009 through January 31, 2010, $8,870.00 for the period February 1, 2010 through January 31, 2011, and $9,180.00 from February 1, 2011 through October 31, 2011. The Landlord also holds a security deposit in the amount of $27,540.00 (the "Deposit") under the terms of the Lease. In addition to seeking to lift the stay to permit the Landlord to proceed with the Debtor's eviction, the Landlord also seeks to apply the Deposit to past-due rent, arguing that it is entitled to exercise the right of recoupment with respect to the Deposit.

The Stipulation settling the summary eviction proceeding called for the issuance of a warrant of eviction against the Debtor but stayed the execution of the warrant of eviction on the condition that (i) the Debtor make future rent payments pursuant to a schedule outlined in the Stipulation; and (ii) consent to a final judgment in the amount of $50,951.02. In the event of a default on the Stipulation the Landlord was required to provide the Debtor with three days written notice of the default, simultaneously with a

notice to the marshal to execute the warrant of eviction.  If the Debtor could not cure the default within three days, the marshal could then execute the warrant of eviction.

The Debtor did not make a payment due on May 7, 2010.  The Landlord wrote the Debtor, informing it of the default and providing the required three days notice to cure. The Debtor did not cure or contest the default.  The Debtor filed its chapter 11 petition on May 24, 2010, before the warrant of eviction was executed.

The Landlord argues that cause exists to lift the stay under section 362(d)(1) of the Bankruptcy Code because the Lease terminated when the warrant of eviction was issued.  Since the Lease terminated prepetition, the Landlord argues that the leasehold is not property of the estate.  The Landlord further argues that cause exists to lift the automatic stay under section 362(d)(2) as the Debtor has no equity in the property.

The Debtor opposes the Landlord's motion, arguing that the Lease did not terminate prepetition and that the Premises are essential to Debtor's reorganization.  The Debtor also argues that it is entitled to assume the Lease.  The Debtor's objection does not address the Landlord's argument that it is entitled to exercise the right of recoupment with respect to the Deposit.

For the reasons explained below, the Court concludes that neither the Debtor nor the Landlord accurately states the law in these circumstances.  Nevertheless, the stay will be lifted, on the conditions stated below, to permit the Debtor to promptly return to state court to seek to vacate the warrant of eviction.  If the state court declines to vacate the warrant of eviction, or if the Debtor fails to comply with the conditions stated below, the Landlord may return to this Court on three (3) business-days' notice to have the stay vacated and to complete the Debtor's eviction.

## DISCUSSION

### A.  The Warrant of Eviction Terminated the Debtor's Lease But the Automatic Stay Remains in Place

State law is clear that the issuance of a warrant of eviction terminates the landlord-tenant relationship.  Section 749(3) of the New York Real Property Actions & Proceedings Law provides as follows:

> The issuing of a warrant for the removal of a tenant cancels the agreement under which the person removed held the premises, and annuls the relation of landlord and tenant, but nothing contained herein shall deprive the court of the power to vacate such warrant for good cause shown prior to the execution thereof.  Petitioner may recover by action any sum of money which was payable at the time when the special proceeding was commenced and the reasonable value of the use and occupation to the time when the warrant was issued, for any period of time with respect to which the agreement does not make any provision for payment of rent.

N.Y. REAL PROP. ACT. & PROC. L. § 749(3) (McKinney 2008 ("RPAPL")).  *See also Bell v. Alden Owners, Inc.*, 199 B.R. 451, 458 (S.D.N.Y. 1996) ("Under New York law, the issuance of a warrant of eviction cancels the lease between the parties and annuls the relationship of landlord and tenant.").

The effect of this statute is clear: the Debtor's leasehold rights were terminated upon the issuance of the warrant of eviction, subject to the power of the state court to vacate the warrant for good cause prior to execution of the warrant.  Nevertheless, case law is also clear that if a debtor remains in possession after the issuance of the warrant, the debtor retains an equitable possessory interest in the leasehold sufficient to trigger the protection of the bankruptcy automatic stay.  *See 48th Street Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th Street Steakhouse, Inc.)*, 835 F.2d 427, 430 (2d Cir. 1987) ("Indeed, a mere possessory interest in real property, without any accompanying legal interest, is sufficient to trigger the protection of the automatic stay."); *In re P.J.*

4

*Clarke's Rest. Corp.*, 265 B.R. 392, 399 (Bankr. S.D.N.Y. 2001) ("These decisions are consistent with the principle recognized by the Second Circuit that a debtor, whose legal rights have been terminated, nonetheless has an equitable interest based on bare possession which is afforded the protections of the automatic stay.").

This court addressed a similar dispute in *In re Mad Lo Lo LLC*, No. 09-11911, 2009 WL 2902567 (Bankr. S.D.N.Y. May 28, 2009). There, Tirn Realty Corp. ("Tirn"), a commercial landlord of the debtor, moved the court for an order either determining that the automatic stay did not apply to the summary nonpayment proceeding pending in state court or to lift the automatic stay so it could execute a warrant of eviction against the debtor. *Id.* at *1. Tirn had obtained a judgment of possession and warrant of eviction against the debtor. The debtor moved to vacate the warrant of eviction by order to show cause and obtained a temporary stay of execution of the warrant pending hearing on the order to show cause. The day before the order to show cause was to be heard, the debtor filed for bankruptcy. *See id.*

Applying RPAPL § 749(3), the court observed that the issuance of the warrant of eviction severed the landlord-tenant relationship between the parties. *Id.* at *2. The court concluded, however, that the automatic stay applied to the debtor's interest in its lease, but only with regards to the debtor's possessory interest in the property. *Id.* (citing *In re Griggsby*, 404 B.R. 83, 92 (Bankr. S.D.N.Y. 2009)). The court further noted that the fact that the automatic stay applied to the debtor's possessory interest in the property did not resurrect the landlord-tenant relationship. *Id.* The debtor, however, could request the court to lift the automatic stay so that it could return to state court and attempt to have the

warrant of eviction vacated and the landlord-tenant relationship reinstated, as the bankruptcy court lacks the power to reinstate the lease. *See id.*

The *Mad Lo Lo* reasoning applies here too. A warrant of eviction was entered on March 26, 2010. Pursuant to RPAPL § 749(3), the issuance of the warrant severed the landlord-tenant relationship between the Landlord and the Debtor. The parties, however, agreed—and the state court so-ordered—a stay of the execution of the warrant of eviction through the Stipulation. Other courts have likewise held that where a court issues a warrant of eviction but stays its application, a possessory interest remains that may be protected by the automatic stay. *See In re Eclair Bakery, Ltd.*, 255 B.R. 121, 133 (Bankr. S.D.N.Y. 2000) (observing that under New York Law the automatic stay applies where a court enters a warrant of eviction and stays its application); *In re W.A.S. Food Service Corp.*, 49 B.R. 969, 972–73 (Bankr. S.D.N.Y. 1985) (concluding that automatic stay continued in effect to allow the debtor to pursue its remedies in state court). Indeed, the *Eclair* court determined that even after the issuance of a warrant of eviction both (i) "an equitable interest in the property and the potential to reinstate the landlord-tenant relationship, as RPAPL § 749(3) provides" and (ii) "a possessory interest in the property" remains. *Id.* Thus, while the automatic stay may apply to protect the Debtor's equitable and possessory interests in the property, contrary to the Debtor's argument, no landlord-tenant relationship exists.

The Debtor, however, argues that the Lease is still in effect. The Debtor claims that this case is "on all fours" with *In re P.J. Clarke's Rest. Corp.*, 265 B.R. 392. Specifically, the Debtor argues that Judge Gropper determined that, for purposes of section 365(d)(3) of the Bankruptcy Code, leases that have terminated prior to the

petition date may be reinstated in accordance with state law procedures. *Id.* at 398. The

Debtor, however, misreads Judge Gropper's decision. *P.J. Clarke's* holds only that a

lease may be considered to be unexpired for purposes of performing postpetition

obligations pursuant to section 365(d)(3) if it was terminated prior to the petition but

could be reinstated under state law. Judge Gropper did not indicate that because a lease

may be considered to be unexpired for purposes of section 365(d)(3), the lease is

considered unexpired for all other purposes under the Bankruptcy Code, or that a

bankruptcy court may reinstate the terminated leasehold. Indeed, Judge Gropper

concluded that the automatic stay should be lifted to permit the debtor to return to state

court to continue its then-pending appeal of the state court ruling that had determined that

the lease had been terminated.[1]

> **B. Provided the Debtor Meets Its Current Rent Obligations and Becomes Current on Postpetition Arrears, Under the Conditions Set Forth Below, There Is No Cause Under § 362(d)(1) to Lift the Automatic Stay to Permit the Landlord to Complete Debtor's Eviction**

That the automatic stay is currently in place, and may be lifted to permit the

Debtor to return to state court to seek to vacate the warrant of eviction, does not

completely resolve the issue whether the Court should lift the stay to permit the Debtor to

do so, or whether, instead, the stay should be lifted to permit the Landlord to complete

the Debtor's eviction. Section 362(d)(1) provides that the court shall grant relief from the

stay "for cause, including the lack of adequate protection of an interest in property of

such party in interest . . . ." 11 U.S.C. § 362(d)(1). "The failure to pay post-petition rent

---

[1]    In *P.J. Clarke*, no warrant of eviction had been issued by the state court. Judge Gropper concluded, however, that since the state court had rendered a judgment determining that the lease was terminated, the bankruptcy court could not review the state court judgment, and relief was only available by direct appeal in the state court. *See P.J. Clarke*, 265 B.R. at 403 ("The law is clear that the Bankruptcy Code does not permit a debtor to re-litigate an issue already determined in state court . . . .")

may also serve as grounds for lifting the automatic stay." *In re Mad Lo Lo LLC*, 2009

WL 2902567, at *4.  The Landlord will also not be adequately protected if the Debtor

falls behind in postpetition rent.  *Id.*  During the hearing on the lift-stay motion, the

Debtor's counsel represented that he tendered to the Landlord the stub rent for May 2010

and the full rent for June 2010, but that the tender was declined because the Landlord did

not want to prejudice its rights to assert that the Lease was terminated.

Section 365(d)(3) provides, in pertinent part:

> The trustee shall timely perform all the obligations of the debtor . .
> . arising from and after the order for relief under any unexpired
> lease of nonresidential real property, until such lease is assumed or
> rejected. . . .  The court may extend, for cause, the time for
> performance of any such obligation that arises within 60 days after
> the date of the order for relief, but the time for performance shall
> not be extended beyond such 60-day period."

11 U.S.C. § 365(d)(3).  And, *In re P.J. Clarke's*, 265 B.R. at 398, requires that a debtor

that wishes to assume a lease—even one that terminated prepetition—must comply with

the requirement to timely perform all obligations under a lease.  Therefore, the Debtor

may not assume the Lease (assuming the warrant of eviction is vacated) unless the Debtor

remains current on all postpetition payments to the Landlord.  This case was filed on May

24, 2010, permitting the Court to extend the Debtor's time to become current on all

postpetition rent to the Landlord to no later than June 25, 2010.  Thus, in addition to

requiring that the Debtor remain current on all future postpetition rent payments, the

Court conditions continuation of the automatic stay on Debtor's payment to the Landlord

of the May stub rent and June rent no later than 5 p.m., June 25, 2010.  The Landlord may

accept these payments without prejudice to its rights.  If the Debtor fails to remain current

on all postpetition rent, or fails to pay postpetition rent arrears by June 25, 2010, the

Landlord may move the Court on three (3) business-days' notice to lift the stay to permit

it to proceed with Debtor's eviction.  Finally, for the stay to remain in effect, the Debtor must commence proceedings in the state court to vacate the warrant of eviction within seven (7) days from the date of this Order.

The Landlord also argues, in the alternative, that the Court should lift the stay pursuant to section 362(d)(2).  For relief to be granted under section 362(d)(2) the debtor must both (i) lack equity in the property, and (ii) the property must not be necessary to an effective reorganization.  *See* 11 U.S.C. § 362(d)(2).  Here, it is clear that the Lease is necessary to the reorganization as the Debtor cannot operate its business without the Lease.  Therefore, the Court denies the Landlord's motion pursuant to section 362(d)(2). *In re Miltrany*, No. 08-40034, 2008 WL 2128162, *4 (Bankr. E.D.N.Y. 2008) ("Both elements of Section 362(d)(2) must be satisfied in order for the court to grant relief from the automatic stay.") (citing *Pegasus Agency, Inc. v. Grammatikakis (In re Pegasus Agency, Inc.)*, 101 F.3d 882, 886 (2d Cir. 1996)).

### C. The Debtor May Not Assume the Lease Unless the State Court First Vacates the Warrant of Eviction

The Debtor also erroneously argues that the Lease is part of the estate and may be assumed pursuant to section 365(d)(3) of the Bankruptcy Code without having the state court vacate the warrant of eviction.  Only if the state court first reinstates the landlord-tenant relationship by vacating the warrant of eviction may the Debtor assume the Lease under section 365(d)(3).  Judge Brozman addressed this precise issue in *In re W.A.S. Food Service Corp.*, 49 B.R. at 971–72.  There, a warrant of eviction was entered against the debtor, ending landlord-tenant relationship.  The landlord argued that the chapter 11 trustee could not assume the lease without having a state court vacate the warrant of eviction and reinstate the landlord-tenant relationship.  *Id.* at 970.  The debtor remained

in possession of the property pursuant to a stipulation providing for the payment of arrears as well as ongoing rent and the immediate issuance of a warrant of eviction. The stipulation, however, stayed the execution of the warrant of eviction if payments were timely made. *Id.* at 971. The court concluded that while the automatic stay protected the debtor's possessory interest in the property, "the mere potentiality of a restoration of the landlord tenant relationship through vacatur of the warrant of eviction, does not vest the debtor with a sufficient interest in the leased property to allow assumption and assignment of the lease." *Id.* at 972 (internal citations and footnote omitted); *see also In re Issa Corp.*, 142 B.R. 75, 78 (Bankr. S.D.N.Y. 1992) ("But the mere potentiality of restoration of the landlord tenant relationship through vacatur of the warrant of eviction does not vest the debtor with a sufficient interest in the leased property to allow assumption and assignment of the lease.").

The facts here are almost exactly the same as those in *W.A.S. Food Service Corp.* The Debtor here maintains that it is entitled to assume a lease that was terminated by the issuance of a warrant of eviction. But, as in *W.A.S. Food Service Corp.*, the possibility that the Debtor *may* convince a state court to vacate the warrant of eviction is not a sufficient to allow the Debtor to assume a terminated lease. The Debtor cites no law to the contrary. This Court, however, in similar circumstances, has lifted the automatic stay to permit the debtor to seek to vacate a warrant of eviction in state court before it could seek to assume the lease under section 365(d)(3). *See In re Mad Lo Lo LLC*, 2009 WL 2902567 at *4.

### D. The Rent Deposit is Subject to Setoff, But Not to Recoupment

As already indicated, the Landlord also seeks to apply the $27,540.00 Deposit to past-due rent, arguing that it is entitled to exercise the right of recoupment with respect to the Deposit. While not defined in the Bankruptcy Code, the Code contemplates and accepts the equitable doctrine of recoupment. 5 COLLIER ON BANKRUPTCY ¶ 553.10. Recoupment is essentially a right to reduce the amount of a claim. It "does not involve establishing the existence of independent obligations" and "may arise only out of the same transaction or occurrence that gives rise to the liability sought to be reduced." *Id.* In this Circuit, the right of recoupment only arises when the debts "arise out of a *single integrated transaction* such that it would be *inequitable* for the debtor to enjoy the benefits of that transaction without also meeting its obligations." *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 147 (2d Cir. 2002) (quoting *In re Malinowski*, 156 F.3d at 133) (internal quotation marks omitted) (emphasis in original). Whereas setoff rights arise out of different transactions assuming the other elements are met. *See In re Malinowski*, 156 F.3d 131, 133 (2d Cir. 1998). When, however, a single contract "contemplates the business to be transacted as discrete and independent units, even claims predicated on a single contract will be ineligible for recoupment." *Westinghouse Credit Corp.*, 278 F.3d at 147 (quoting *In re Malinowski*, 156 F.3d at 135) (quotation marks omitted). "The main distinction between the doctrines of setoff and recoupment is that setoff is a form of cross-action that depends in its application upon the existence of two separate, mutual obligations . . . . In contrast, recoupment is in the nature of a right to reduce the amount of a claim, and does not involve establishing the existence of independent obligations." 5 COLLIER ON BANKRUPTCY ¶ 553.10.

The parties have not cited and the Court has not found any cases that employ recoupment to lease security deposits.  Cases typically apply setoff principles under section 553 of the Bankruptcy Code, and not recoupment, when analyzing lease security deposits.  Recoupment has been applied in cases concerning utility security deposits, but the deposits in those cases were paid in accordance with state utility statutes.  The distinction between recoupment and setoff is important because the automatic stay applies to any setoff effort, but not to a creditor's recoupment.  *Compare* 11 U.S.C. § 362(a)(7) (stating that the automatic stay applies to "the setoff of any debt owing to the debtor that arose before the commencement of the case") *with Ferguson v. Lion Holdings, Inc.*, 312 F. Supp. 2d 484, 502 (S.D.N.Y. 2004) (observing that recoupment "is not subject to the automatic stay provisions of 11 U.S.C. § 362").

Bankruptcy courts have applied section 553 (setoff) to rent security deposits. *Schwartz v. C.M.C., Inc. (In re Communical Cen., Inc.)*, 106 B.R. 540, 542–43, 545 (Bankr. N.D. Ill. 1989) (applying setoff under section 553 and not recoupment when analyzing an adversary proceeding seeking the return of a security deposit held by a debtor's landlord); *In re Inslaw, Inc.*, 81 B.R. 169, 170 (Bankr. D.D.C. 1987) ("There is substantial authority in this and in other jurisdictions for the proposition that a landlord may, pursuant to 11 U.S.C. Section 553, set off a security deposit against his claim for pre-petition rent.").  Moreover, Collier assumes that lease security deposits are subject to setoff.  *See* 5 COLLIER ON BANKRUPTCY ¶ 553.03[c][iii] ("[A] landlord may offset a security deposit against a claim for prepetition rent, even though state law provides that the lessee retains title to the deposit and that the landlord must hold it in trust in a separate account."); *see also In re Mad Lo Lo LLC*, 2009 WL 2902567 at *4 n.5.

Courts interpret lease security deposits as creating "a debt of the landlord to the tenant contingent on the tenant's performance." *In re Scionti*, 40 B.R. 947, 948 (Bankr. D. Mass. 1984). Lease security deposits are viewed as creating mutual obligations: one on the tenant to perform its obligations under the lease and another on the landlord to return the security deposit on the tenant's complete performance. *See In re Aspen Data Graphics, Inc.*, 109 B.R. 677, 683–84 (Bankr. E.D. Pa. 1990) (determining that a security deposit created mutual obligations sufficient to trigger right of setoff). These cases are consistent with the treatment of lease security deposits under New York law. *See Kaplan v. Shaffer*, 112 A.D.2d 369, 370 (N.Y. App. Div. 2d Dep't 1985) ("Return of the deposit to the tenant was conditioned upon his full and faithful performance under the lease."). Because lease security deposits are viewed as creating mutual obligations, setoff and not recoupment is the proper mechanism for landlords to seek recovery of lease security deposits. *See Westinghouse Credit Corp.*, 278 F.3d at 147 (observing that, even when claims are based on a single contract, recoupment is not appropriate where obligations are viewed as "discrete and independent"); *see also* 5 COLLIER ON BANKRUPTCY ¶ 553.10 ("The main distinction between the doctrines of setoff and recoupment is that setoff is a form of cross-action that depends in its application upon the existence of two separate, mutual obligations . . . . In contrast, recoupment is in the nature of a right to reduce the amount of a claim, and does not involve establishing the existence of independent obligations.").

The Landlord cites *New York State Elec. & Gas Corp. v. McMahon (In re McMahon)*, 129 F.3d 93 (2d Cir. 1997), in support of its position that recoupment is permissible. But *McMahon* involved a utility deposit and not a rent deposit. Therefore,

the Court concludes that the Deposit in this case may be subject to setoff and not recoupment.  As a result, the automatic stay remains in force preventing the Landlord from exercising any right to setoff with respect to the Deposit.  The Landlord will have to file a motion to lift the stay before it can exercise any right of setoff.

## CONCLUSION

For the reasons explained above, the Landlord's motion to lift the automatic stay is **DENIED**, except to the extent that the stay is lifted on the conditions set forth above to permit the Debtor to commence appropriate proceedings in the state court seeking to vacate the warrant of eviction.  If the Debtor fails to satisfy any of the conditions set forth herein, the Landlord may return to this Court on three (3) business-days' notice seeking to vacate the stay to permit the Landlord to proceed with the Debtor's eviction.

Additionally, the Landlord's motion to apply the Deposit on the basis of recoupment is **DENIED**, without prejudice to the Landlord filing a motion to lift the automatic stay to permit the Landlord to exercise the right of setoff.

**IT IS SO ORDERED.**

DATED:        June 18, 2010
              New York, New York

                          _____/s/Martin Glenn_____
                              MARTIN GLENN
                          United States Bankruptcy Judge